JOHN McMILLEN *et al vs.* JOHN AITCHISON.

Opinion filed March 7th, 1893.

**Verdict—Contrary to Evidence or Instructions.**

> A verdict that must be either without support in the evidence, or contrary to the instructions of the court, cannot be permitted to stand.

**Irrelevant Testimony—Prejudice.**

> The admission of testimony that has no bearing upon the issues as made by the pleadings, but which, from its nature, would tend to prejudice the jury against the party objecting, constitutes reversible error.

Appeal from District Court, Cass County; *McConnell*, J.

Action by John McMillan and Christina McMillan against John Aitchison. Plaintiffs had judgment, and defendant appeals.

Reversed.

*Francis & Southard*, for appellant.

*Benton & Amidon*, for respondents.

BARTHOLOMEW, C. J. To reverse a judgment against him, based upon a verdict, the defendant and appellant assigns six errors: *First*, that the evidence was insufficient to support the verdict, specifying wherein it was insufficient; *second*, that the complaint did not state facts sufficient to constitute a cause of action; *third*, error of the court in ruling upon the admission of evidence; *fourth*, error of the court in refusing to nonsuit, or direct a verdict for defendant; *fifth*, error of the court in refusing an instruction asked by appellant; and, *sixth*, that the verdict was contrary to the evidence and instructions. The second assignment is not well taken, and merits no discussion, beyond what is incidental to the disposition of the other assignments.

The respondents are husband and wife, and their complaint alleges that on and prior to April 5th, 1885, one Ober was indebted to respondents for work and labor performed for him at his request, in the sum of $400; that on said 5th day of April, 1885, and while said indebtedness was due and unpaid, the appellant, Aitchison, undertook and agreed to pay said respondents

said amount, and that, as a consideration for said promise, respondents agreed to, and did, enter into the employment of appellant, and did perform valuable services for him, and which were beneficial to him. There is a further allegation that during the year 1885, and, as appears from the evidence, some months subsequent to April 5th, the appellant "had in his possession and control, and was indebted to said Ober, in, a certain large sum of money," and that respondents were about to commence an action against said Ober, and attach the money and property in appellant's hands, and that appellant further promised and agreed that if respondents would not commence such proceedings, and attach said property in his hands, he would pay respondents the debt owing them from said Ober, and that, in consideration of such promise, respondents did not take the legal steps contemplated. The answer was, in substance, a denial. As we read the instructions, the jury were plainly told that respondents could recover nothing by reason of this latter promise, set forth in the complaint; and, as neither party complains of such instruction, it must stand as the law of the case, and our investigations are confined to the first promise alleged. As this promise rests in parol, only, it is admitted that, if it were a collateral promise of guaranty, it was void, under the statute or frauds. But it is claimed that it was an original undertaking based upon a benefit accruing directly to the promisor.

Section 4277, Comp. Laws, reads: "A promise to answer for the obligations of another in any of the following cases is deemed an original obligation of the promisor, and need not be in writing: * * * (3) Where the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it cancels the antecedent obligation, accepting the new promise as a substitute therefor, or upon the consideration that the party receiving it releases the property of another from a levy, or his person from imprisonment, under an execution on a judgment obtained upon the antecedent obligation, or upon a consideration beneficial to the promisor, whether moving from either party to

the antecedent obligation, or from another person." In this case the antecedent obligation was not released, as respondents subsequently contemplated an action against Ober. Neither was there a release of property from any levy, as no actual levy was ever made. If the case falls within the statute, it is by reason of the final provision,—"or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation or from another person." This statutory provision, it will be noticed, excludes a portion of the broad consideration "of benefit or harm moving between the newly contracted parties," as laid down by Chief Justice Kent in *Leonard* v. *Vredenburg*, 8 Johns. 29, and the cases that have followed that decision, and confines it to that which is beneficial to the promisor, but without regard to the source from which the benefit moves. The learned trial court placed the case entirely upon this promise, and the charge to the jury was full, clear, and very fair to appellant. The jury could not have returned a verdict for respondents without disregarding the court's instructions, unless they found the promise was made as alleged, and based upon a consideration beneficial to the promisor.

It is earnestly contended that the evidence does not warrant a finding that any such promise was made. The court told the jury plainly that, if appellant incurred any liability to respondents, "it was by reason of some contract made on April 5th, 1885." As to what occurred on that day, Mr. McMillan testified: "Mr. Aitchison wanted to engage me and my wife, and I told him we would not engage with any person until we got a settlement for the previous year. He said he had everything in that place in black and white, in his own name, but that Ober was to have an interest, but if we would stay he would pay the wages before Ober should have a cent on the farm." This, clearly, was a conditional promise only, and before any recovery could be had thereon the existence of the specified conditions must be alleged and proven. Mrs McMillan testified as to the same transaction: "I was present during the conversation between my husband and Mr. Aitchison.

He had not intended to stay there, unless we had a settlement, but Mr. Aitchison asked him to stay, and said that if we would stay he would pay us for the indebtedness of Mr. Ober, and on that condition we stayed." This was on direct examination, and, if unqualified, would support the finding. But on cross-examination she testified that she did not remember exactly what Mr. Aitchison said; "I remember that I got from what he said that he would pay the wages." And further on: "I heard him say that, before Ober got his interest out of the farm, he would pay this money." This witness is positive about the conditional promise. The absolute promise seems to have been her deduction from what was said. But it would be bordering upon the absurd to suppose that appellant, at the same time, and in reference to the same matter, made both a positive and conditional promise of performance. The appellant testified: "I told him [McMillan] I thought he ought to have something, and that, before I made over anything to this Ober, I would see that they were paid." And on cross-examination: "I told him * * * that I should not let my countryman suffer; that I would take care that I made Ober pay him before I gave him any title to the half section." The testimony of this witness showed that he had a parol contract with this man Ober, by the terms of which, under certain contingencies, he was to convey to Ober one half of the farm on which this work was to be done. The evidence of the two parties who made the agreement shows that it was conditional. A third party who heard it also testifies to its conditional character, but uses language which, if not subsequently qualified, would import a positive agreement. Nor is it possible to avoid giving some consideration to the circumstances under which this agreement was made. It is undisputed that at the same time, and as a part of the same transaction, appellant, employed respondents to work for him on the farm for one year,—he says, for the sum of $460; McMillan says, for the sum of $38 per month. Either sum was the full ordinary price for such services in that locality. Respondents continued to work for appellant a portion of the succeeding

year at the same wages. It is not conceivable that a man of ordinary business prudence should unconditionally bind himself to pay nearly double the ordinary wages. Under the facts and circumstances, as disclosed by the evidence, we are clear that, if the jury found that the positive promise alleged in the complaint was in fact made, such finding was without any sufficient support in the evidence, under the rule announced by this court in *Fuller* v. *Elevator Co.* 2 N. D. 220, 50 N. W. Rep. 359, and the case must be reversed under the first assigned error. If, on the other hand, the jury returned a verdict for respondents, without finding the existence of such positive promise, then the verdict was contrary to the instructions of the court, and the case must be reversed under the sixth assignment.

It is proper to add that the verdict of the jury may have been somewhat influenced by reason of certain matters raised under the third assignment. One Bruce was called as a witness for respondents. He seems to have been the financial agent of Mr. Ober. He was asked whether or not, at any time during the summer of 1886, he received from Mr. Aitchison, for the credit of Mr. Ober, any money. This was objected to by counsel for appellant as irrelevant and immaterial, and the objection was over-ruled. In answer the witness said that in the summer of 1885 he received $575 from Mr. Aitchison for the credit of Mr. Ober; and by other questions, all answered against appellant's objections, this fact was made prominent before the jury. If respondents were seeking a recovery under the positive promise set forth in the complaint,—and under the instructions they could recover on no other ground,—it was entirely immaterial whether subsequent to such promise appellant paid Ober any money. He was equally liable whether he did or did not. Such fact had no possible bearing upon the issues made by the pleadings. And yet the prejudice to appellant of such testimony, after the evidence as to the contingent character of the promise had been given, is too evident for discussion. The admission of that testimony was

reversible error. *Jones* v. *Bacon*, (Sup.) 19 N. Y. Supp. 553; *Railroad Co.* v. *Hepner*, (Tex. Sup.) 18 S. W. Rep. 441; *Bank* v. *Carson*, 30 Neb. 104, 46 N. W. Rep. 276. The District Court is directed to reverse its judgment and grant a new trial. All concur.